IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 11-120 |
| NESTOR LUIS MERCED-CALDERON | : | |
| | : | |
| Defendant. | : | |

**OPINION**

**Slomsky, J.**                                                                                                                                                                  June 17, 2011

**I.  INTRODUCTION**

Before the Court is the Government's Motion to Disqualify Counsel for Defendant Nestor Luis Merced-Calderon based on defense counsel's representation of another client who is a defendant in an unrelated criminal case. This client will be referred to as "Client #1."[1] On April 20, 2011, the Court heard argument on the Government's oral Motion to Disqualify Counsel.[2] Following the hearing, the Court afforded both Government and defense counsel an opportunity to submit briefs on the Motion. Both parties did so. (See Government's Motion for Disqualification of Defense Counsel (Doc. No. 29); Defendant's Response to the Government's

---

[1] Client #1 has pled guilty to crimes charged in an indictment filed in the Eastern District of Pennsylvania. Before pleading guilty, he entered into a cooperation plea agreement with the Government and agreed to provide the Government with information on criminal activity. Client #1 is in custody and awaits sentencing.

[2] Although the Court has not held an evidentiary hearing on the Motion to Disqualify, neither party has requested one. A court is not required to hold an evidentiary hearing on such a motion. See, e.g., United States v. Voigt, 89 F.3d 1050, 1076 (3d Cir. 1996). The Court heard argument on the oral Motion to Disqualify and has afforded both parties the opportunity to submit briefs and supplement the record in support of or in opposition to the Motion. The factual record has been fully developed, permitting the Court to make a reasoned decision on the Motion.

1

Motion for Disqualification of Defense Counsel (Doc. No. 33).) The Court has considered these briefs as well as the arguments of the parties at the April 20, 2011 hearing. For reasons that follow, the Court will deny the Motion to Disqualify Counsel for Defendant.

## II.  FACTUAL BACKGROUND

On March 17, 2010, Client #1 was arrested while driving his vehicle in Philadelphia. (Doc. No. 33 at 2.) In the course of searching the vehicle incident to this arrest, police recovered 10 kilograms of cocaine. (Id.) Client #1 has been in custody since his arrest. (Id.)

On July 14, 2010, a Grand Jury sitting in the Eastern District of Pennsylvania returned a Second Superseding Indictment charging Client #1 and others with conspiracy to distribute 5 kilograms or more of cocaine. (Doc. No. 29 ¶ 1.) Client #1 retained present defense counsel in that case to represent him. (Id.; Doc. No. 33 at 2.) Soon after retaining defense counsel, Client #1 began cooperating with the Government by providing information on other criminal activity. (Doc. No. 29 ¶ 3; Doc. No. 33 at 2.) He attended several proffer sessions at which defense counsel was present (Doc. No. 29 ¶ 3; Doc. No. 33 at 2), and provided information about a drug trafficking organization ("DTO"), which operates in Philadelphia using vehicles with hidden compartments to transport drugs and drug proceeds. (Doc. No. 29 ¶ 3; Doc. No. 33 at 2.) On January 4, 2011, Client #1 pled guilty pursuant to a cooperation plea agreement and, as noted, is awaiting sentencing. (Doc. No. 29 ¶ 2; Doc. No. 33 at 2.)

Based in part on information provided by Client #1, law enforcement officers began investigating members of a particular DTO. (Doc. No. 29 ¶ 3; Doc. No. 33 at 3.) Using surveillance, the officers identified various locations throughout Philadelphia that they suspected might be used for storing and packaging drugs. (Doc. No. 33 at 3.) A garage located at 3835-37

2

North 5th Street in Philadelphia was one such location. (Id.)

On November 27, 2010, law enforcement officers observed Defendant Merced-Calderon in a vehicle exiting the garage on North 5th Street. (Doc. No. 29 ¶ 4; Doc. No. 33 at 3.) Defendant's car was stopped a short time later by police officers in Bensalem, Pennsylvania. (Doc. No. 29 ¶ 4; Doc. No. 33 at 3.) Following this traffic stop, Defendant was arrested and his car was searched. (Doc. No. 29 ¶ 4; Doc. No. 33 at 3.) The officers recovered 12 kilograms of cocaine. (Doc. No. 29 ¶ 4; Doc. No. 33 at 3.)

Following this arrest, Defendant Merced-Calderon was prosecuted in state court by the Bucks County District Attorney's Office prior to being charged in a federal indictment. (Doc. No. 29 ¶ 5.) Defendant retained present defense counsel to represent him. (Id.) Defense counsel represented him throughout the proceedings in state court. (Id.) On March 2, 2011, a Grand Jury sitting in the Eastern District of Pennsylvania returned the instant Indictment charging Defendant with possession with intent to distribute 5 kilograms or more of cocaine. (Id. ¶ 6; Doc. No. 12.) This charge was also based on the November 27, 2010 arrest of Defendant and the recovery of the 12 kilograms of cocaine in his car. Defense counsel continued his representation of Defendant Merced-Calderon in this federal case. (Doc. No. 15.)

On March 29, 2011, defense counsel filed a Motion to Suppress Physical Evidence in this case. (Doc. No. 18.) In the Motion, Defense counsel challenges the validity of the November 27, 2010 traffic stop, arguing that the stop was merely a pretext for Drug Enforcement Administration (DEA) agents to search Defendant's car. Arguing to the contrary, the Government offers two reasons to justify the stop: 1) the Bensalem police had reasonable suspicion to believe Defendant committed a violation of the Pennsylvania Motor Vehicle Code

because he had an obstruction on his windshield; and 2) DEA agents had reasonable suspicion to believe the car contained drugs or drug proceeds based on Defendant's presence in the North 5th Street garage. (See Doc. No. 20.) Defendant challenges the reasons given by the Government for the stop. He contends that his presence at the North 5th Street garage did not give rise to reasonable suspicion that he was using his vehicle to transport drugs or drug proceeds and therefore the stop was illegal. Further, he asserts that the alleged motor vehicle violation did not occur and cannot serve as a basis for the stop.

In Response to the Motion to Suppress, the Government explains in part that based on information provided from persons cooperating with the government (including Client #1) and surveillance of the property, law enforcement officers had reasonable suspicion to believe that the North 5th Street garage was being used to facilitate drug offenses. (Doc. No. 20 at 8-9.) Therefore, when Defendant left this location in his vehicle, they had a reasonable belief that the vehicle contained drugs or drug proceeds. (Id.) This reasonable belief justified the stop regardless of whether the police had reason to believe that Defendant committed a motor vehicle violation. (Id.) At a suppression hearing, the Government intends to prove the reasonableness of the stop with information provided by government informants (including, but not limited to, Client #1). (Transcript of the April 20, 2011 Hearing, "Hr'g Tr." at 5:10-23.)

At the April 20, 2011 scheduled hearing on the Motion to Suppress, the Government moved for the first time to disqualify defense counsel, arguing that to zealously represent Defendant on the Motion to Suppress, defense counsel must challenge the reliability of information provided to law enforcement officers, some of which was provided by Client #1. (Hr'g Tr. at 5:24-6:19.) By challenging the reliability of such information, defense counsel will

4

be challenging the reliability of his own client, Client #1. (Id.) According to the Government, this tactic would constitute either a breach of defense counsel's duty of loyalty owed to Client #1, or a breach of his duty to zealously represent Defendant Merced-Calderon because defense counsel may be inhibited from fully challenging the Government's evidence on reasonable suspicion since it will require him to attack the reliability of Client #1. (Id. at 6:22-7:8.)

Defense counsel disagrees. He asserts that the Government does not intend to call Client #1 as a witness at the suppression hearing. (Id. at 6:20-22.) Client #1 does not know Defendant, nor did he provide any information about Defendant, Defendant's vehicle, or the North 5th Street location which would provide law enforcement officials with reasonable suspicion to believe that Defendant was involved in the DTO. (Id. at 11:2-10.) Defense counsel argues that challenging law enforcement officials on whether they had a reasonable suspicion to suspect Defendant Merced-Calderon's vehicle contained drugs or drug proceeds when they stopped him does not require a challenge to the reliability of the information provided to the Government by Client #1. (Id. at 11:11-25.) Moreover, defense counsel states in his Memorandum of Law:

> Defense counsel cannot conceive of any line of questioning or advocacy on this narrow and remote subject matter that would cause him to either divulge a confidence or divide his loyalty.

(Doc. No. 33 at 7.)

Thus, he believes that he can zealously represent Defendant while maintaining his duty of loyalty owed to both clients and his duty to protect Client #1 and not use confidential communications against him. (Id. at 12:1-8.)

## III. LEGAL STANDARD

In light of the Supreme Court's decision in United States v. Gonzalez-Lopez, a court must give careful consideration to a Motion to Disqualify Counsel. 548 U.S. 140 (2006). The right to counsel is guaranteed in the Sixth Amendment to the United States Constitution. The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]." Wheat v. United States, 486 U.S. 153, 158 (1988) (quoting U.S. Const. amend. VI).

The Third Circuit has made clear "[t]he Sixth Amendment guarantee of effective assistance of counsel includes . . . the right to the attorney's undivided loyalty free of conflict of interest." United States v. Moscony, 927 F.2d 742, 748 (3d Cir. 1991) (citations omitted). In addition, an essential aspect of the right to counsel is the right to counsel of one's choice. "[A] presumptive right to the counsel of one's choice has been recognized as arising out of the sixth amendment." United States v. Fumo, 504 F. Supp. 2d 6, 23 (E.D. Pa. 2007) (quoting Moscony, 927 F.2d at 748).

When the right to counsel of one's choice and the right to an attorney's undivided loyalty are in tension, a court must determine whether the presumption in favor of the right to counsel of one's choice is overcome. In the absence of an actual conflict or serious potential for conflict, the presumption in favor of a defendant's choice of counsel must stand. Fumo, 504 F. Supp. 2d at 23. On the other hand, the presumption can be overcome "by a demonstration of actual conflict . . . [or] a showing of a serious potential for conflict." Fumo, 504 F. Supp. 2d at 23 (quoting Wheat, 486 U.S. at 164).

To determine whether there is a conflict, this Court considers the Pennsylvania Rules of

Professional Conduct ("RPC") 204 Pa. Code § 81.4 (2011). See Fumo, 504 F. Supp. 2d at 25 (citing In re Grand Jury Investigation, No. 03-123, 2006 WL 2385518, at *3 (E.D. Pa. May 16, 2006) (finding that the RPC provide a useful template against which to measure the conduct of lawyers subject to a disqualification motion)). The RPC provide an ethical framework within which an attorney must practice. In the Eastern District of Pennsylvania, "[t]he Local Rules of Civil and Criminal Procedure . . . require attorneys . . . to comply with the RPC." Fumo, 504 F. Supp. 2d at 25 (citing Local R. Civ. P. 83.6; Local R. Crim. P. 1.2).

Rule 1.16 of the RPC provides "a lawyer shall not represent a client . . . [where] the representation will result in a violation of the [RPC] or other law . . . ." 204 Pa. Code § 81.4. In the instant case, the Government contends defense counsel's representation will result in a violation of Rules 1.7 and 1.9. Rule 1.7 of the RPC covers conflicts of interest. It provides:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyers.

RPC § 1.7. Rule 1.9 defines the duty of a lawyer to a former client. It provides:

> [A] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent. . . . [Also, a] lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . use information relating to the representation to the disadvantage of the former client . . . .

7

RPC § 1.9.

In addition, Rule 1.6 of the RPC sets forth the duty of confidentiality. "A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent."[3] RPC § 1.6(a). Confidential information is not limited to information protected under the attorney client privilege.[4] All information relating to the representation of Client #1 is

---

[3] Rule 1.6 is subject to limited exceptions provided in Subparts (b) and (c) to the Rule. Subparts (b) and (c) provide:

> (b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3.
>
> (c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:
>
> (1) to prevent reasonably certain death or substantial bodily harm;
>
> (2) to prevent the client from committing a criminal act that the lawyer believes is likely to result in substantial injury to the financial interests or property of another;
>
> (3) to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used; or
>
> (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or
>
> (5) to secure legal advice about the lawyer's compliance with these Rules; or
>
> (6) to effectuate the sale of a law practice consistent with Rule 1.17.

RPC § 1.6 (b), (c).

[4] Defense counsel is steadfast in asserting that there is no information told to him by Client #1 protected by the attorney-client privilege which he could foresee using in the instant

deemed confidential under Rule 1.6. Id.

The Supreme Court has recognized, "the likelihood and dimensions of nascent conflicts are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Wheat, 486 U.S. at 162-63. As a result, a court's determination of whether a conflict exists is given "substantial latitude." Id.

IV.     **DISCUSSION**

In the instant case, the potential conflict arises out of defense counsel's prior representation of Client #1. Client #1 provided the Government with information relating to a Drug Trafficking Organization ("DTO"). In reliance on information from sources including Client #1, the Government began investigating the DTO and this investigation ultimately led to Defendant's arrest. To establish reasonable suspicion for the stop of Defendant and his arrest, the Government intends to present testimony of a law enforcement officer who will recount information provided by Client #1 and other sources.

The Government argues defense counsel's representation of Defendant Merced-Calderon will violate either Rule 1.7 or 1.9 because a challenge to the reasonable suspicion of law enforcement officials must involve impeaching the credibility of Client #1. According to the Government, defense counsel must either use confidential information obtained during his representation of Client #1 to impeach the credibility of Client #1, in violation of the confidentiality requirements of Rule 1.9, or fail to effectively cross-examine a government

---

case. However, the duty of confidentiality restricts the use of all information relating to representation of a client including, but not limited to, information covered by the attorney-client privilege.

9

witness in violation of his duty to zealously represent Defendant as required by Rule 1.7. For reasons that follow, the Court finds this argument unavailing because the two clients are so far removed from each other that it is unlikely the claims of the Government will arise.

In the instant case, neither Client #1 nor Defendant Merced-Calderon know each other. Moreover, the relationship between the information provided by Client #1 and the reasonableness of the stop and arrest of Defendant is attenuated. The information is only a small part of the Government's case, and will not bear directly on Defendant's guilt at trial or have a significant impact on the reason for stopping his car. The information provided by Client #1 did not specifically discuss the North 5th Street location, Defendant, or Defendant's vehicle. In addition, the information was only part of a larger investigation leading to Defendant's arrest.

Moreover, the Government does not intend to call Client #1 as a witness. Instead the Government intends to call a law enforcement officer who relied, in part, on information provided by Client #1. Even if defense counsel challenges the credibility of this witness, he may not challenge the credibility of Client #1 because the credibility of Client #1 may not directly impact the credibility of the witness. The credibility of Client #1 may only impact the reliability of a piece of information the law enforcement witness will present. Defense counsel will not be cross-examining his own client and has asserted that he will not divulge a confidence or divide his loyalty. Under these circumstances, the Court concludes there has not been a showing of serious potential for conflict.

In addition, the cases upon which the Government relies are distinguishable from the instant case. For example, in <u>United States v. Moscony</u>, defendant was charged with fraud on the Federal Housing Administration and the Internal Revenue Service. 927 F.2d 752, 747-49 (3d

Cir. 1991). The firm representing defendant also represented three of defendant's employees who would be called by the government as witnesses. Id. at 747. At least one of the employees who would be called as a witness was "intimately involved" in defendant's illegal activities. Id. at 750. His testimony and the testimony of the other employees would be used as direct evidence to establish the fraudulent practices in which defendant engaged. Id. at 750-51.

The Third Circuit found the testimony of the employees "would be central to the government's case, and that vigorous cross-examination would be necessary." Id. at 747-48. The court also found cross-examination "if forgone . . . would have deprived [defendant] of his Sixth Amendment right to effective counsel, and if pursued would have violated ethical standards." Id. at 748. However, unlike the instant case, the witnesses' testimony would provide direct evidence of defendant's guilt and be a central aspect of the case. See id. at 747-48. The witnesses were slated to testify or very likely would testify. See id. For these reasons, counsel in Moscony was disqualified.

The Government also relies upon United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996) and United States v. Stewart, 185 F.3d 112 (3d Cir. 1999) in support of its position that disqualification is proper. However, these cases are also distinguishable. As in Moscony, the client-witnesses were slated to testify or were very likely to testify, their testimony was an important aspect of the case, and their testimony would provide direct evidence of defendant's guilt. Disqualification of counsel was therefore proper.

Most importantly, the theoretical conflict in the instant case is less significant than in cases where there were conflicts, but disqualification was not warranted. For example, in United States v. Fumo, the court denied a Motion for Disqualification of the firm representing

11

defendant. 504 F. Supp. 2d 6. In addition to defendant, the firm represented three victim entities whose employees would be called to testify in Fumo. Id. at 28. The firm had not represented the employees individually, but rather the entities who employed them. Id. The court found the firm was not placed in the "untenable position of cross-examining former clients armed with confidential information," despite the presumption that confidential information has been received from former clients. Id. at 29. The presumption that confidential information has been received from former clients arises whenever an attorney represents a client. However, the presumption of receipt of confidential information and the potential for disqualification if this information is misused does not apply where, as here, a former client will not be cross-examined by defense counsel and the information is not critical to the case or to the reasonableness of a stop or arrest. Fumo, 504 F. Supp. 2d at 29.

Any confidential information defense counsel has about Client #1 appears attenuated in the instant case. An investigation followed information being provided to the Government by Client #1 and others. Moreover, defense counsel has represented to the Court in his Memorandum of Law that he would not use any confidential information or information protected by the attorney-client privilege sourced from Client #1 in this case. He made the same representation at the April 20, 2011 hearing on this Motion, after the Court asked him:

> [A]re you going to use any information at all that you've learned from [Client #1] during the course of that representation to either the detriment of [Client #1] or for the advantage of another client, who would be Mr. Nestor Luis Merced-Calderon who is the defendant in this case[?] That's where the Rules of Professional Conduct try to come into play.

(Hr'g Tr. at 12:10-16.) Defense counsel responded, "I can conceive of none." (Id. at 12:17-18.) Thus, it appears that defense counsel will not impeach the credibility of Client #1 and that this

factor will not "materially limit" the representation of Defendant Merced-Calderon. Since defense counsel represents that he does not need to impeach the reliability of Client #1 or use confidential communications, there is no risk of a violation of Rule 1.9. See id. Consequently, the Government has not met its burden of showing an actual conflict or a serious potential for conflict exists in the present case. Given the firm representations of defense counsel and the evidence presented, disqualification does not appear warranted.

Finally, in the Memorandum in Opposition to the Motion, defense counsel suggested:

> Although defense counsel does not believe it is necessary, the Court may require Mr. Merced-Calderon to employ independent back up counsel to assist in limited aspects of the case if the Court has any serious concerns that an actual conflict might arise in connection with the examination of any particular Government witness.

(Doc. No. 33 at 8.) The Court will not appoint back-up counsel for the entire case or limited aspects of the case. Despite the representation of defense counsel of no conflict, the Court will follow a prudent path and appoint independent counsel to consult with and advise Defendant Merced-Calderon on the conflict issue raised by the Government and as discussed in this Opinion. Thereafter, a hearing will be held at which the Court will colloquy Defendant on a waiver of any potential conflict of interest.

## V. CONCLUSION

For the foregoing reasons, the Court will deny the Motion for Disqualification of Defense Counsel (Doc. No. 29).

An appropriate Order follows.